IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 92-1415

_____


JOSEPH PAUL JERNIGAN,

                                        Petitioner-Appellant,

                          versus

JAMES A. COLLINS, DIRECTOR
TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
INSTITUTIONAL DIVISION,

                                        Respondent-Appellee.

_____

Appeal from the United States District Court for the
                Northern District of Texas

_____

(December 15, 1992)

Before JOLLY, DAVIS, and SMITH, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

In 1981, a jury in Texas state court found Joseph Paul Jernigan guilty of the cold-blooded murder of Edward Hale and made the findings necessary to sentence Jernigan to death. Jernigan now seeks habeas corpus relief under 28 U.S.C. § 2254. He contends that in the absence of certain errors by his counsel and the trial judge, he would not have received the death penalty. Finding no merit in his arguments, the district court granted summary judgment in favor of the respondent, James A. Collins, the director of the Texas Department of Criminal Justice. We believe that Jernigan is not entitled to habeas relief because he has not demonstrated that

any errors on the part of his attorney or the trial judge prejudiced his trial. We, therefore, affirm the decision of the district court.

I

On July 3, 1981, Joseph Paul Jernigan and an accomplice burglarized a home near the town of Dawson, Texas. While they were there, the owner, Edward Hale, returned. Jernigan attacked Hale, hitting him repeatedly in the face with an ashtray and attempting unsuccessfully to stab him with a kitchen knife. Jernigan then grabbed a nearby shotgun and shot Hale in the chest and neck. After the shooting, Jernigan continued to burglarize the house.

The sheriff arrested Jernigan several days later based on information his wife, Vicki Jernigan, provided. A few days after his arrest, Jernigan confessed to the murder of Hale.

On November 4, 1981, a jury convicted Jernigan of capital murder. The jury made the findings required by Texas law for the imposition of the death penalty, and the state trial court accordingly sentenced Jernigan to death.

On direct appeal, the Texas Court of Criminal Appeals affirmed the conviction and sentence. See Jernigan v. State, 661 S.W.2d 939, 943 (Tex. Crim. App. 1983) (en banc). The court held that Jernigan's confession was legally obtained, the jury was properly selected and instructed, there were no errors in the joinder of portions of the indictment, and the prosecutors' closing argument

did not deny Jernigan a fair trial. The United States Supreme Court denied a petition for writ of certiorari.

In March of 1984, Jernigan sought collateral review in the Texas state courts. After an evidentiary hearing, the state trial court found, inter alia, that Jernigan's attorneys effectively assisted him at trial and adequately prepared for the sentencing phase of his trial. Accordingly, the state trial court denied Jernigan's habeas petition. The Texas Court of Criminal Appeals also denied him relief.

At the time he petitioned the state court for habeas relief, Jernigan also petitioned the United States District Court, for the Northern District of Texas, for a writ of habeas corpus. Jernigan filed the petition on the docket of Judge Porter, who entered a stay of execution on March 16, 1984. Jernigan contended he was entitled to the writ on eighteen grounds. The respondent, James A. Collins, director of the Texas Department of Criminal Justice, moved for summary judgment and both sides filed briefs with the court. After hearing oral argument, the district court adopted the findings of the state court and granted summary judgment in favor of Collins. Jernigan appeals.

II

A

Jernigan argues that the Texas statutory scheme did not allow the jury to consider his mitigating evidence. Jernigan's death

sentence was based on the jury's affirmative responses to the following two questions:

1)   Was the conduct of the defendant that caused the death of the deceased committed deliberately and with the reasonable expectation that the death of the deceased would result?

2)   Is there a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society?

Relying on our holding in Graham v. Collins, 950 F.2d 1009 (5th Cir. 1992) (en banc), the district court held that the Texas capital sentencing statute permitted the jury to fully consider the mitigating evidence that Jernigan offered.  In Graham, the Fifth Circuit held "that Penry does not invalidate the Texas statutory scheme, and that Jurek continues to apply, in instances where no major mitigating thrust of the evidence is substantially beyond the scope of all the special issues."  Graham, 950 F.2d at 1027. Jernigan is now arguing that the Fifth Circuit reached the wrong decision in Graham.  He relies--we must say, rather weakly--on the fact that Graham was a close decision, and that the Supreme Court has granted the writ of certiorari in Graham, casting doubt on our decision in Graham.

It must be no surprise that we think that Graham and Penry are harmonic.  In Penry v. Lynaugh, 492 U.S. 302, 109 S.Ct. 2934 (1989), the state of Texas convicted the defendant of murder and sentenced him to death.  In the sentencing stage of his trial, the defendant presented mitigating evidence indicating that he was

mildly retarded and that his parents had abused him while he was growing up. The Supreme Court held that the Texas special issues, without a special instruction, did not allow the jury to give effect to the defendant's mitigating evidence, and, hence, the jury's answers to the special issues did not reflect a "reasoned moral response" to the defendant's mitigating evidence. Penry, 109 S.Ct. at 2949.

In Graham, we reevaluated the Texas statutory scheme in the light of the Supreme Court's decision in Penry. The defendant's mitigating evidence in that case was his youth and his difficult childhood. The Fifth Circuit held that the Texas statutory scheme allowed the jury fully to consider the defendant's mitigating evidence. See also Cordova v. Collins, 953 F.2d 167 (5th Cir. 1992).

In the instant case, Jernigan's brother-in-law and his sister-in-law both gave mitigating evidence at the sentence phase of Jernigan's trial. Both of them testified basically that Jernigan was a kind, gentle person who deserves a second chance. Jernigan's brother-in-law testified that Jernigan had rededicated his life to God.

Despite counsel's able arguments, we think that the Texas Special Issues allowed the jury to consider Jernigan's mitigating evidence. First, Graham is the prevailing law in this circuit. Second, irrespective of the continuing viability of Graham, the jury was easily able to give affect to Jernigan's mitigating

-5-

evidence when it answers special issue number two, which relates to whether Jernigan represents a continuing threat to society. Jernigan's evidence that he is kind and gentle suggests that he is not a continuing threat to society. Unfortunately for Jernigan, the jury found otherwise.

B

We now turn to Jernigan's ineffective assistance of counsel claim. Jernigan argues that the district court used the wrong standard when it concluded that his attorneys provided him with effective assistance at trial. Jernigan contends that the district court erred when it presumed that the state court's factual findings were correct. Jernigan further contends that the district court erred when it granted summary judgment in favor of Collins because the affidavits of Ms. Tullos Kozlowski and Lynn Malone, relating to his future dangerousness, created a genuine issue of material fact.

(1)

We begin with Jernigan's allegation that the district court used the wrong standard when it evaluated his claim that his attorneys did not provide effective assistance of counsel. In the district court, Jernigan alleged that his trial counsel were ineffective in twelve different respects. Noting that Jernigan did not plead the claims with the requisite specificity, the district court dismissed seven of Jernigan's twelve ineffective assistance

claims.  The district court considered Jernigan's five remaining claims individually before rejecting them.

Contrary to Jernigan's argument, the district court correctly applied the two-part standard for evaluating ineffective assistance of counsel claims that the Supreme Court established in Strickland v. Washington, 466 U.S. 668, 687 104 S.Ct. 2058, 2064 (1984). Under Strickland, the defendant must first demonstrate that "his counsel's performance was deficient."  For his counsel's performance to be deficient, the defendant must show that his attorney's errors were "so serious that his counsel was not functioning as the `counsel'" the Sixth Amendment guarantees the defendant.  Id.  Second, the defendant must also show that his counsel's performance prejudiced him and lead to a trial "whose result is unreliable."  Id.  The petitioner has the burden of proof on this claim.  He must demonstrate, by a preponderance of the evidence, that his counsel was ineffective.  Martin v. Maggio, 711 F.2d 1273, 1279 (5th Cir. 1983).

(2)

Moving on to the substance of Jernigan's ineffective assistance of counsel claim, Jernigan complains that his attorneys failed to prepare for the punishment phase of his trial.  He contends that his attorneys failed to investigate his background and interview his family members.  In the state court habeas corpus hearing, the court found that Jernigan's attorneys did investigate his background and prepare for the punishment phase of his trial.

The district court presumed that the state court's factual findings were correct and granted summary judgment in favor of the respondent, Collins. Jernigan contends that the district court should not have adopted the state court's factual findings. Consequently, Jernigan argues that he is entitled to a federal hearing to evaluate his ineffective assistance of counsel claim.

Jernigan's argument fails for two reasons. First, Jernigan bears the burden of proving there is a need for a federal evidentiary hearing to evaluate his claim. To meet that burden, Jernigan must demonstrate that his "allegations, if proved, would establish the right to habeas relief." Streetman v. Lynaugh, 812 F.2d 950, 956 (5th Cir. 1987), quoting Townsend v. Sain, 372 U.S. 293, 307 83 S.Ct. 745, 754 (1963). Jernigan has failed to meet this burden. As noted above, under Strickland, in order to make out an ineffective assistance of counsel claim, the defendant must demonstrate, inter alia, that his counsel's performance prejudiced him and led to a trial "whose result is unreliable." Strickland, 104 S.Ct. at 2064.

According to Jernigan, if his attorneys had investigated his background and interviewed his family members, they would have discovered mitigating evidence that would have convinced the jury not to give him the death penalty. The record does not support this contention. Jernigan's family members testified in the state court habeas hearing, and their testimony does not add substantially to what was said by those who testified at trial.

Jernigan's lead attorney, Jimmy Morris, testified that he made a strategic decision not to call more members of his family because, in his experience, juries do not respond well to that kind of evidence. Thus, Jernigan has not established prejudice and, hence, we must reject his ineffective assistance of counsel claim.

Jernigan's ineffective assistance of counsel claim also fails because federal law generally requires the district court to presume that the state court correctly found the facts in its habeas corpus hearing. 28 U.S.C. § 2254; King v. Collins, 945 F.2d 867. 868 (5th Cir. 1991). Thus, unless Jernigan demonstrates that his case falls within one of the exceptions to this rule, the district court was fully justified when it accepted the factual findings of the state court. Jernigan argues that the district court should have disregarded the state court's findings for the following three reasons. First, the state court hearing was not full and fair. Second, the state court hearing did not adequately develop the material facts. Third, the record does not adequately support the findings of the state court. 28 U.S.C. §§ 2254(d)(3,6,8).

We begin with Jernigan's contention that the state court hearing was not full and fair. This argument is frivolous. Jernigan was a party to the proceeding, and he was represented by counsel. Furthermore, the court afforded him every opportunity to be heard. Accordingly, the state court provided a full and fair

hearing.  See King, 945 F.2d at 868; Sumner v. Mata, 449 U.S. 539, 546-547, 101 S.Ct. 764, 769 (1981).[1]

Next, we consider Jernigan's contention that the parties did not adequately develop the material facts in the state court proceeding.  We will only excuse a federal habeas corpus petitioner's failure to develop material facts and mandate a federal evidentiary hearing under two circumstances:  First, the petitioner can show cause for his failure to develop the facts in the state court proceeding and actual prejudice resulting from that failure; and second, when the petitioner can show that a fundamental miscarriage of justice would result from the failure to hold a federal evidentiary hearing.  Keeney v. Tamayo-Reyes, ___ U.S. ___, 112 S.Ct. 1715, 1721 (1992).

Jernigan can neither show cause for his failure to present evidence, nor can he demonstrate that the failure to hold a federal evidentiary hearing has resulted in a fundamental miscarriage of justice.  To show cause, Jernigan must demonstrate that "some objective factor external to the defense impeded counsel's efforts"

_____

[1]Jernigan also contends that the state court was biased against him.  He argues that the state court's factual findings and one of its statements demonstrate bias.  Jernigan failed to raise this argument before the district court, and, hence, he waived it. Lincecum v. Collins, 958 F.2d 1271, 1280-1281 (5th Cir. 1992).  In addition, this argument is totally without merit.  Jernigan argues that the lack of support for the state court's findings in the record proves bias.  This argument assumes that the record does not support the state court's findings.  Yet, that is the very proposition the argument is intended to prove.  Thus, Jernigan's argument is circular and, hence, frivolous.

to develop the evidence.  <u>McCleskey v. Zant</u>, 499 U.S. ___, 111 U.S. S.Ct. 1454, 1470 (1991).  No external concerns or events prevented Jernigan from calling his witnesses, and we have already concluded that the state court afforded him a full and fair hearing. Similarly, Jernigan cannot show that the absence of a federal evidentiary hearing has resulted in a fundamental miscarriage of justice.  To show a fundamental miscarriage of justice, Jernigan would have to demonstrate "by clear and convincing evidence that but for a constitutional error, no reasonable juror would have found [him] eligible for the death penalty."  <u>Sawyer v. Whitley</u>, ___ U.S. ___ 112 S.Ct. 2514, 2517 (1992).  As noted above, Jernigan's new mitigating evidence is cumulative of what he presented at trial, and it certainly does not show that a reasonable jury would not have given him the death penalty.  Thus, we must reject Jernigan's argument that he deserves a federal hearing because the facts were not adequately developed in the state hearing.

We now turn to Jernigan's allegation that the record does not support the state court's findings.  In particular, Jernigan complains about findings of fact numbers seventeen and nineteen:

> 17)  The family members' testimony presented by Applicant at this hearing would not have helped Applicant in any way in the trial and would not have changed the outcome of the trial.

> 19) The attorneys for Applicant did make an investigation into Applicant's background for the purpose of securing witnesses to testify in mitigation of punishment and they called all of the witnesses that they

believed would help the Applicant, and the attorneys for the Applicant strategically determined that the people named by Applicant in his petition for writ of habeas corpus would be more than helpful to Applicant's case.

We find unconvincing Jernigan's argument that the record does not support these findings. Jernigan's argument is based on the affidavit of Ms. Tullos Kozlowski, one of his trial attorneys. Kozlowski, who did not testify at the hearing, now claims that she did little or nothing to prepare for trial. She specifically asserts that she did not speak to Jernigan's family members or otherwise prepare for the sentencing phase of the trial.

Despite Kozlowski's current allegations, we believe that the record supports the state court's findings. Kozlowski seems to have exaggerated her role in the trial. It was her first murder trial, and in the sentencing phase of the trial, she only cross-examined one witness. Mr. Morris, the lead attorney, had already participated in over a hundred murder trials and is now a judge on the Texas court of criminal appeals. At the state habeas corpus hearing, he testified that he prepared for the sentencing phase of the trial, and that he made a tactical decision not to call Jernigan's family members because, in his experience, juries do not respond well to this kind of evidence. Furthermore, as we have already noted, testimony by several more of Jernigan's family members would not have added substantially to the evidence before the jury. Thus, from our review of the testimony of Jernigan's

family members and the testimony of Morris, we conclude that the state court's findings are fully supported.

C

Finally, we consider Jernigan's contention that the testimony of three attorneys at the sentencing phase prejudiced his trial. The three attorneys were: 1) Mr. Lynn Malone, a district attorney in another court, 2) Mr. Walden, an assistant attorney general for the state of Texas, and 3) Mr. Nicholson, a former judge. They all testified during the punishment phase of the trial that Jernigan was likely to commit violent criminal acts in the future. These attorneys were not professional experts in human behavior, and only one of them had any personal knowledge about the defendant. Jernigan argues that this evidence was unreliable and its admission violated his rights under the Fifth, Sixth, and Eighth Amendments.

We review state evidentiary rulings merely to determine whether the trial judge's error was so extreme that it constituted a denial of fundamental fairness. Evans v. Thigpen, 809 F.2d 239, 242 (5th Cir. 1987). Thus, the erroneous admission of prejudicial testimony justifies habeas corpus relief only when it played a "crucial, critical [and] highly significant" role in the trial. Andrade v. McCotter, 805 F.2d 1190, 1193 (5th Cir. 1986). Because our review is limited to errors of constitutional dimension, federal courts do not review the mere admissibility of evidence under state law. Peters v. Whitley, 942 F.2d 937, 940 (5th Cir. 1991).

Collins argues that the testimony of the attorneys was admissible under state law, and hence, admission of the evidence was not an error reaching constitutional dimension. The Texas courts have held that the lay opinion of a prosecutor is relevant and admissible evidence in a capital case on the issue of the defendant's future dangerousness. Esquivel v. State, 595 S.W.2d 516, 527-528 (Tex. Crim. App. 1980); Simmons v. State, 594 S.W.2d 760, 763 (Tex. Crim. App. 1980); Burns v. State, 556 S.W.2d 270, 280 (Tex. Crim. App. 1977). In Burns, a district attorney testified during the sentencing stage of a murder trial that "once they have committed one offense they are a menace to society and continue to do so," and that in his opinion, the defendant would commit violent criminal acts in the future. Id. The situation in Burns is analogous to the instant case. Thus, the precedents make clear that the evidence of the three attorneys was admissible under Texas law.

Even if the evidence was not admissible in Texas, Jernigan has not demonstrated that the evidentiary error, if any, made his trial fundamentally unfair. He had every opportunity to cross-examine the attorneys and to call his own witnesses to rebut their testimony. Relying on Malone's affidavit, Jernigan argues that the attorneys' testimony was full of misrepresentations. Malone's affidavit, however, does not indicate that he misrepresented the truth when he testified. Instead, he says in his affidavit that he now believes that the judge should not have permitted the jury to

-14-

consider his testimony because he was not qualified to testify.

Moreover, the testimony of the three attorneys played a small role in the trial.  The state presented evidence that Jernigan had been involved in numerous other crimes including several other violent burglaries.  The state also presented evidence concerning Jernigan's behavior while in custody that indicated he was a violent person.  Finally, seven law enforcement officers testified that Jernigan was reputed to be a violent, dishonest person. Considered in the light of all the other evidence, the testimony of the three attorneys was not a critical, highly significant part of the trial and, thus, does not, in any event, justify habeas corpus relief.

### III

For all of the foregoing reasons, we AFFIRM the decision of the district court.

A F F I R M E D.