UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 96-60136
_____


SAMMY HARRIS,

                                    Petitioner-Appellant,

                         versus

JAMES V. ANDERSON, Superintendent,
Mississippi State Penitentiary,

                                    Respondent-Appellee.

_____

Appeal from the United States District Court for the
            Northern District of Mississippi
                  (1:94-CV-259-D-D)
_____
                  December 6, 1996
Before REAVLEY, GARWOOD, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

     Sammy Harris, a Mississippi state prisoner, appeals the denial

of his federal habeas petition.  We affirm.

     I.   PROCEDURAL HISTORY

     A jury convicted Harris of robbery in Mississippi state court.

After a hearing during which the state court found Harris to be an

habitual offender for purposes of Miss. Code Ann. § 99-19-81, the

--------------------

[*]     Pursuant to Local Rule 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in Local Rule 47.5.4.

court sentenced Harris to a 15-year term of imprisonment in the Mississippi Department of Corrections. Harris filed a motion for new trial which the court denied. Harris appealed the judgment of conviction and sentence, and the Mississippi Supreme Court affirmed. Harris v. State, 637 So.2d 880 (Miss. 1994).

Harris subsequently filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in federal district court, raising the same issues that he had argued on direct appeal to the Mississippi Supreme Court. The district court, over Harris' objections, adopted the report and recommendation of the magistrate judge and dismissed Harris' § 2254 petition. On February 29, 1996, the court granted Harris a certificate of probable cause (CPC) to appeal.

II. CERTIFICATE OF APPEALABILITY

Final judgment and the grant of CPC, as well as Harris' notice of appeal, were entered prior to April 24, 1996, the date on which the President signed the Antiterrorism and Effective Death Penalty Act of 1996 (the Act), Pub. L. No. 104-132, 110 Stat. 1214 (1996). The Act amended 28 U.S.C. § 2253 to require the issuance of a "certificate of appealability" (COA) by a circuit justice or judge before an appeal may proceed in a § 2254 action. The Act at § 102.

Agreeing with the Tenth Circuit,[1] this Court recently determined that the standard for obtaining a CPC is the same as the standard for obtaining a COA, and thus, application of § 102 of the

---

[1] Lennox v. Evans, 87 F.3d 431 (10th Cir. 1996).

AEDPA to cases pending on appeal would not constitute retroactive application of a statute under Landgraf v. USI Film Products, 511 U.S. 244, 114 S.Ct. 1483 (1994). Drinkard v. Johnson, 97 F.3d 751, 756 (5th Cir. 1996). We also noted that there was a discrepancy between the amended version of § 2253 and the amended version of Rule 22(b) of the Federal Rules of Appellate Procedure. Section 2253 now authorizes either a circuit justice or judge to issue a COA, while the amended version of Fed. R. App. P. 22(b) authorizes a COA to be issued by a either a circuit or district judge. The Act at § 103. Thus, it appears that under § 2253, a district court may not have the authority to grant a COA. In Drinkard, we did not have to address the apparent discrepancy because of the procedural posture of the case, i.e., the district court had not granted a CPC or a COA. Here, as stated above, the district court has granted a CPC. Of course, at the time it granted a CPC, the court certainly had the authority to do so.

In any event, because neither party has raised this issue, and, as discussed below, Harris is not entitled to relief whether or not the district court was authorized to issue a COA, we decline to reach this issue. Cf. Martin v. Maxey, WL 596420 (5th Cir. Nov. 1, 1996) (noting that because neither side argued whether new law applies retroactively to appeal and outcome not changed, issue of retroactivity not reached).[2] In other words, assuming the district

_____

[2]    We note the district courts have come to different conclusions regarding their authority to issue a COA. See e.g., Parker v. Norris, 929 F.Supp. 1190 (E.D. Ark. 1996) (concluding that it did

court now has the power to grant a COA, we would treat the prior grant of CPC as a grant of COA and affirm the district court's denial of habeas relief. If, however, the district court is not imbued with the authority to issue a COA, and the Act operates so as to strip us of our power to hear this case in the absence of a COA notwithstanding that the CPC was valid when granted, then we must conclude that Harris has not made a substantial showing of the denial of a constitutional right and deny a COA.[3]

III. SUFFICIENCY OF THE EVIDENCE

Harris argues that the evidence was insufficient to support his robbery conviction. More specifically, he argues that even if the State proved at trial that he was in possession of stolen property or trying to pass forged checks, the evidence did not support his robbery conviction.

The standard for testing the sufficiency of the evidence in a federal habeas review of a state-court conviction is whether, "`after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the

---

not have authority to rule on motion for a COA); Houchin v. Zavaras, 924 F.Supp. 115 (D.Colo. 1996) (holding that Rule 22(b) authorized it to issue a COA). Obviously, neither of these two cases involved a situation where, as here, a CPC had been granted by the district court prior to the effective date of the Act.

[3]     The amended version of Rule 22(b) provides that "[i]f no express request for a certificate is filed, the notice of appeal shall be deemed to constitute a request addressed to the judges of the court of appeals." Thus, if the CPC signed by the district court became ineffective after the Act was enacted, we would treat Harris' notice of appeal as a request for a COA.

4

essential elements of the crime beyond a reasonable doubt.'" Guzman v. Lensing, 934 F.2d 80, 82 (5th Cir. 1991) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). Under Mississippi law, a person commits robbery if he "feloniously take[s] the personal property of another, in his presence or from his person and against his will, by violence to his person or by putting such person in fear of some immediate injury to his person." Miss. Code Ann. § 97-3-73.

Harris does not dispute that the victim was robbed; instead, he argues that there is insufficient evidence to prove that he committed the robbery. The victim had poor eyesight and was unable to visually identify Harris. She testified that she did not look at his face during the robbery. She did testify that the perpetrator was approximately six feet tall, heavy, about 200 pounds, and with "afro hair style." The victim also positively identified Harris' voice as that of the perpetrator. Three employees from two different stores testified that Harris attempted to cash the victim's checks. The police seized the following items from Harris' residence: gloves that matched the description given by the victim; the stolen flashlight that contained batteries that bore the fingerprints of the victim's son; and clothes identical to the ones worn by the man who attempted to cash the victim's checks. Viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of robbery under Mississippi law beyond a

reasonable doubt.  See Guzman, 934 F.2d at 82.  Therefore, the district court did not err in denying habeas relief on this ground.

IV.  FATAL VARIANCE

Harris argues that a fatal variance existed between the proof offered at trial and the indictment.  He argues that the indictment charged that he committed robbery on February 6, 1987, but that the proof offered at trial suggested that the robbery occurred on February 26, 1987.  He argues that the trial court should have corrected the error in the indictment.  Harris' argument is without merit.

At trial, the state successfully moved, without objection, to amend the indictment to conform to the proof offered at trial to reflect that the alleged robbery occurred on February 26, 1987, and the jury instructions reflect the February 26, 1987, date.  The district court did not err in denying habeas relief on this ground because Harris' argument is factually misplaced.  Further, any variance between the original indictment and the proof offered at trial has not been shown to be fatal.  Johnson v. Estelle, 704 F.2d 232, 236 (5th Cir. 1983), cert. denied, 465 U.S. 1009 (1984).

V.  EVIDENTIARY RULING

Harris argues that a tape recording of the victim identifying his voice was so suggestive as to result in the denial of a fair trial even under "a plain error standard of review."  The tape was made outside the presence of the jury and, at defense counsel's request, was submitted into evidence.  Because Harris' counsel

sought the admission into evidence of the voice-identification testimony at trial, the error, if any, would have been invited. See United States v. Puig-Infante, 19 F.3d 929, 941 (5th Cir.), cert. denied, 115 S.Ct. 180 (1994) (applying doctrine of invited error on direct criminal appeal).  In any event, because the taped testimony was offered to reveal the victim's initial uncertainty regarding her recognition of Harris' voice, there could be no error of constitutional dimension.  See Jernigan v. Collins, 980 F.2d 292, 298 (5th Cir. 1992), cert. denied,  508 U.S. 978 (1993) (evidentiary rulings reviewed to determine whether denial of fundamental fairness).

VI.   SENTENCING

Harris argues that the state court erred, during his habitual offender hearing, by referring to his testimony during the trial and using that testimony to prove that he was an habitual offender under Miss. Code Ann. § 99-19-81.  Miss. Code Ann. § 99-19-81,[4] "requires proof that the defendant had been twice previously

---

[4]    Section 99-19-81 provides that:

   Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, shall be sentenced to the maximum term of imprisonment prescribed for such felony, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.

convicted of a felony in [Mississippi] or another [state]." Lacy v. State, 629 So.2d 591, 594 (Miss. 1993). Under Mississippi law, certified copies of commitment papers are competent evidence of previous convictions for purposes of proving that a defendant is an habitual offender. See Estelle v. State, 558 So.2d 843, 848 (Miss. 1990) (Miss. Code Ann. § 99-19-83).

At sentencing, the State introduced evidence of Harris' prior convictions in the form of certified copies of Harris' two prior convictions for touching a child for lustful purposes for which he sentenced to a suspended ten-year term of imprisonment and for uttering forgery for which he was sentenced to a twelve-year term of imprisonment. Although Harris also stated at sentencing that he recalled testifying at trial that he had two or three prior felony convictions, the court relied on the certified copies of the convictions in determining that Harris was an habitual offender. Thus, as the district court held, this argument lacks merit.

Harris also argues that the state court violated his due process rights during the habitual-offender hearing because the trial court failed to give him an opportunity to rebut the State's evidence of the prior convictions. As the district court determined, Harris received a bifurcated trial, consisting of a trial to determine his guilt and a hearing on the habitual-offender charge at which Harris was given the opportunity to rebut the state's evidence of the prior felony convictions. See Seely v. State, 451 So.2d 213, 214-15 (Miss. 1984). Harris' counsel offered

8

no objections to the habitual-offender evidence.  The district court did not err in denying habeas relief on this ground.

VII. INEFFECTIVE ASSISTANCE OF COUNSEL

To prevail on an ineffective assistance of counsel claim, Harris must show that his counsel's performance was deficient and that the deficiency prejudiced his defense.  Strickland v. Washington, 466 U.S. 668, 687, 694, 104 S.Ct. 2052 (1984).

Harris argues that his counsel was ineffective for failing to object to the admission into evidence of the suggestive voice identification.  However, as referenced above, Harris' counsel sought the admission into evidence of the tape of the voice identification testimony as a part of his trial strategy.

Although the victim testified before the jury regarding her positive identification of Harris' voice, she also testified regarding her inability to identify Harris by appearance; further, the jury heard the tape of the victim indicating that she was uncertain, at least initially, that Harris' voice was the voice of the man who robbed her.  The jury also heard on the tape that it was only after Harris repeated the statements several times that the victim identified Harris' voice.  Harris failed to demonstrate ineffective assistance of counsel with respect to this claim because counsel's strategy was a reasonable trial strategy.

Harris argues that his counsel was ineffective during the habitual-offender hearing for allowing the court to refer to his admission during trial of his prior felony convictions.  As

9

discussed above, the court relied on certified copies of Harris' prior convictions in determining that he was an habitual offender.

Harris also suggests that his counsel was ineffective for failing to object to the purported violation of his due process rights during the habitual-offender hearing and for failing to object to the admission at trial of the flashlight and batteries found during a search of Harris' residence. Harris fails to show either deficient performance or prejudice with respect to such claims.

AFFIRMED.