# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

_____

m 00-30390
Summary Calendar
_____

DAVID EDWARDS,

Plaintiff-Appellant,

VERSUS

WAL-MART STORES, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Western District of Louisiana
(99-CV-11)
_____

January 8, 2001

Before JOLLY, SMITH, and DENNIS, Circuit
   Judges.

JERRY E. SMITH, Circuit Judge:[*]

* Pursuant to 5TH CIR. R. 47.5, the court has
determined that this opinion should not be
published and is not precedent except under the
limited circumstances set forth in 5TH CIR.
R. 47.5.4.

David Edwards appeals a summary
judgment in a suit against his employer under
the Americans with Disabilities Act ("ADA").
Finding no reversible error, we affirm.

I.

Edwards, who can neither hear nor speak
but can communicate through sign language,
finger spelling, and written notes, worked as a
merchandise stocker for Wal-Mart Stores, Inc.
("Wal-Mart"). He has a high school
equivalency diploma from the Louisiana

School for the Deaf and a degree from a junior college. He worked at Wal-Mart for four years and held a second job at Pizza Hut for three years using these limited communication skills.

Edwards's managers at Wal-Mart learned some sign language, and the assistant manager carried a notepad for communicating with him. Edwards never asked for or required a certified interpreter; although he had no difficulty performing assigned tasks, he occasionally received reprimands for sleeping past his break.

Wal-Mart terminated Edwards for stealing a root beer from the stock room. A co-worker reported that Edwards had removed a can of root beer from the inventory pallet, opened the can, and took a drink. The night shift manager reviewed a videotape that allegedly confirmed the story. She then went to the receiving area and found the open root beer but no other beverage cans. She reported the incident to the assistant manager, who reviewed the videotape and interviewed the worker who initially had reported the theft.

The assistant manager met with Edwards, discussed the incident, and terminated him, in accordance with company policy, for unauthorized removal of property. At that meeting, Edwards communicated with his superiors in his usual fashionSSthrough finger spelling, sign language, and written notes. A co-worker who knew some sign language assisted Edwards.

Edwards first denied the incident, then tried to explain that he had purchased his own drink, a 7-Up. He said he had been ill that night and had taken medication; if he had taken a root beer, then he had made a mistake.

He further suggested that a co-worker had received permission to drink a damaged beverage without discipline. Edwards did not see the videotape, because company policy forbade it.

## II.
Edwards sued for violation of the ADA for failure to provide him with reasonable accommodations for his disability and by discharging him because of his disability. The district court granted summary judgment for Wal-Mart on the basis that Edwards had failed to make any showing of discrimination.

## III.
Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).[1] We review a summary judgment *de novo*, using the same standards as did the district court. *Allen v. Rapides Parish Sch. Bd.,* 204 F.3d 619, 621 (5th Cir. 2000). We also review *de novo* the district court's interpretation of the ADA. *Lara v. Cinemark USA, Inc.,* 207 F.3d 783, 786 (5th Cir.), *cert. denied,* 121 S. Ct. 341 (2000).

## IV.
Edwards contends the court erred in deciding that Wal-Mart had no obligation to

---

[1] *See also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

provide an interpreter.[2] The ADA requires employers to make reasonable accommodations for a qualified individual with a disability, defined as a person "who, with or without reasonable accommodation, can perform the essential functions of the employment position . . . ." 42 U.S.C. § 12111(8). The ADA recognizes "the provision of qualified readers or interpreters" as a reasonable accommodation. *Id.* § 12111(9)(B).

Edwards, however, did not ask for a certified interpreter.[3] "In general . . . it is the responsibility of the individual with the disability to inform the employer that an accommodation is needed. . . . If the employee fails to request an accommodation, the employer cannot be held liable for failing to provide one." *Taylor v. Principal Fin. Group, Inc.,* 93 F.3d 155, 165 (5th Cir. 1996) (quoting 29 C.F.R. § 1630.9, App. (1995)).[4]

Edwards contends that when the employer knows the employee has a disability, the employer should initiate an interactive process to develop a reasonable accommodation. Although the employer does have a good faith obligation to engage in this process, the employer must have adequate notice that the employee needs additional assistance.[5] An employer "should do what it can to help" when an "employee may need an accommodation but doesn't know how to ask for it," *Bultemeyer v. Fort Wayne Cmty. Schs.,* 100 F.3d 1281, 1285 (7th Cir. 1996), but even in that case, the employee had his doctor send a letter to his employer requesting an accommodation. *Id.* Thus, an employer need not divine the needs of the employee absent *any* affirmative signal from that employee.[6]

Neither party suggests that Edwards could not communicate to Wal-Mart that he desired

---

[2] Edwards also contends that Wal-Mart's refusal to show him the video constituted a failure to make a reasonable accommodation. He did not raise this claim before the district court; thus, he has waived it. *See Abbott v. Equity Group, Inc.,* 2 F.3d 613, 627 n.50 (5th Cir. 1993); *Jernigan v. Collins,* 980 F.2d 292, 297 n.1 (5th Cir. 1992).

[3] Although Edwards stated that he needed an interpreter for "emergency situations" such as store meetings, a co-worker who knew sign language would interpret for him, or the assistant manager would write notes to him about these meetings. Edwards had this assistance at the termination meeting and admitted that he had not requested a certified interpreter for that meeting.

[4] *See also Loulseged v. Akzo Nobel, Inc.,* 178 F.3d 731, 736 & n.4 (5th Cir. 1999) ("Accordingly, the burden is on the employee to request an (continued...)

[4](...continued) accommodation."); *Burch v. Coca-Cola Co.,* 119 F.3d 305, 319-20 (5th Cir. 1997) (holding that employee's claim that employer had denied a reasonable accommodation was not actionable because he had not requested an accommodation before termination).

[5] *See Taylor v. Phoenixville Sch. Dist.,* 184 F.3d 296, 313 (3d Cir. 1999) (noting that "he employer must know of both the disability and the *employee's desire for accommodations*") (emphasis added).

[6] Indeed, *Loulseged* further distinguishes *Bultemeyer* by noting that the employee in that case had a mental disability. That court noted that the mental disability may affect the employee's ability to understand that he needs an accommodation but that "[w]hen, as here, an employee's disability is purely physical, the employee will generally be in the best position to determine her own needs and capacities." *Loulseged*, 178 F.3d at 736 n.5.

a certified interpreter. Wal-Mart's management recognized the need for interpretive help and brought in an employee with rudimentary sign language skills who usually interpreted for Edwards at company meetings. The manager additionally used written notes, just as he had done in the past, to explain to Edwards that he was being terminated. The fact that Edwards used these written notes to tell the manager his side of the story indicates that he had the ability to request additional assistance had he needed it.[7]

Furthermore, Edwards has not established that he ever before had requested accommodations. Even though he believed he had asked for an interpreter for company meetings on several occasions, he could not remember any details to substantiate that assertion. "A wrongful termination claim under the ADA is not properly analyzed under a reasonable accommodation theory unless an employer is shown to have terminated a qualified individual with a disability in order to avoid accommodating that employee's impairments at the workplace." *Burch,* 119 F.3d at 314. Edwards has not even hinted that Wal-Mart discharged him to avoid providing reasonable accommodations. Therefore, the district court correctly concluded that Wal-Mart had no duty under the ADA to provide a certified interpreter at the termination meeting.

## V.

Edwards avers that the court erred in

---

[7] Edwards notes that the night shift manager asked the assistant manager to bring in an interpreter who was fluent in sign language at the termination meeting. Because Edwards must affirmatively indicate a need for additional assistance, this fact has no relevance.

finding that he had made no *prima facie* case that Wal-Mart discharged him because of his disability. The ADA prohibits employers from discriminating "against a qualified individual with a disability" on the basis of that disability. 42 U.S.C. § 12112(a). We have recognized two methods of establishing a *prima facie* case of discrimination under the ADA: One uses direct evidence, the other indirect.

## A.

To establish a prima facie case *via* direct evidence, Edwards "must show: (1) that he has a disability; (2) that he was qualified for the job; and (3) that he was subject to an adverse employment decision because of his disability." *Ivy v. Jones,* 192 F.3d 514, 516 (5th Cir. 1999). The parties do not contest that Edwards satisfies each of these requirements or that he has not introduced any direct evidence to connect that employment decision to intentional discrimination on the basis of his disability; thus, he has not made out a *prima facie* case under the third prong of the test.

## B.

A plaintiff may use the indirect method of proof set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-05 (1973). *Daigle v. Liberty Life Ins. Co.,* 70 F.3d 394, 396 (5th Cir. 1995). Edwards must show that he (1) suffers from a disability; (2) is qualified for the job; (3) was subject to an adverse employment action; and (4) was replaced by a non-disabled person or was treated less favorably than were non-disabled employees. *Id.* The parties do not dispute that Edwards was replaced by a hearing, speaking individual, so he has made a *prima facie* case under *McDonnell Douglas*.

Having done so, Edwards is entitled to a presumption of discrimination that the

4

employer must rebut by "articulat[ing] some legitimate, non-discriminatory reason" for the employment action. *McDonnell Douglas*, 411 U.S. at 802. The employer need not prove the legitimate reason; it need only put forth evidence; the burden of proving intentional discrimination "remains at all times with the plaintiff." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507 (1993) (quoting *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253 (1981)).

Wal-Mart has produced evidence that it terminated Edwards for violating company policy, so "the presumption raised by the *prima facie* case is rebutted and drops from the case." *Id.* (quoting *Burdine,* 450 U.S. at 255 & n.10). At this point, Edwards must show that the proffered reason is pretextual or unworthy of credence. *Burdine*, 450 U.S.at 253, 256. To show pretext, he may use evidence establishing his *prima facie* case, *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, ___, 120 S. Ct. 2097, 2106 (2000), but he still must prove that Wal-Mart intended to discriminate on the basis of his disability.

Edwards has established no nexus between termination and disability. He stated in deposition that he did not know whether the company discriminated against him based on his disability, on his race, or both. He further admits that his manager would not terminate him absent plain evidence that he had stolen company property, and he has not produced any evidence to contradict the testimony of the eyewitnesses and those who viewed the videotape that he committed a terminable offense under a company policy applicable to all employees.

Indeed, Edwards's testimony was contradictory: He first denied the incident,

then admitted he mistook the root beer for his own 7-Up. Although he suggests that Wal-Mart's refusal to allow him to view the videotape evidences a discriminatory intent, Wal-Mart policy prohibits *any* employee from viewing such a videotape.

Edwards asks us to believe that the fact that Wal-Mart lost the videotape between his termination and his lawsuit suggests pretext, but multiple witnesses testified to the contents of the videotape.[8] Edwards portrays the slight variations in the testimony of these witnesses as additional evidence of pretext, but each witness stated that Edwards took a can of soda from the pallet and drank the contents.

Despite the alleged evidence of discrimination, Edwards makes no reference to any negative or offensive comments related to his disability, to a pattern of discrimination against the disabled at the store, or indeed to any other negative encounter at Wal-Mart related to his disability in the four years he worked there. Moreover, Edwards undermines his own argument by testifying that management learned some sign language to communicate with him. He admitted that the assistant manager who terminated him supported the deaf community. Furthermore, the same manager who terminated him also hired him; thus, Wal-Mart may receive the

---

[8] Edwards argues for the first time on appeal that the loss of the videotape constitutes spoilation of the evidence. Because he did not raise this point before the district court, he has waived it. *See, e.g., Estate of Martineau v. Arco Chem. Co.,* 203 F.3d 904, 913 (5th Cir. 2000) (citing *Vaughner v. Pulito,* 804 F.2d 873, 877 (5th Cir. 1986) (noting that if a party fails to assert a legal reason why summary judgment should not be granted, he waives the right to assert it on appeal)).

5

benefit of an inference——the "same actor" inference——that discrimination did not motivate the termination. *See Brown v. CSC Logic, Inc.,* 82 F.3d 651, 658 (5th Cir. 1996).

Therefore, Edwards has failed to prove intentional discrimination, even when all the facts are construed in his favor. A district court may properly award summary judgment when

> a party . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986).

Edwards has not presented any issue of fact material to the question of intentional discrimination. He disputes only Wal-Mart's evidence that he stole——a fact more relevant to whether Wal-Mart terminated him without sufficient proof than to intentional discrimination. Edwards perhaps had more difficulty communicating his side of the story than would a hearing and speaking person, but he has offered no evidence that Wal-Mart treated him differently from any other employee.

In sum, Edwards has not connected the termination to an intent to discriminate on the basis of disability. As the district court perceptively stated, "this court finds not a single shred of evidence to support Edwards' claim that Wal-Mart terminated him because of his disabilities. There is simply no evidence of discriminatory intent or motive on the part of Wal-Mart in this case."

AFFIRMED.