**REVISED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 94-20839

_____

JESSEL TURNER,

Petitioner-Appellant,

versus

GARY JOHNSON, Director, Texas Department
of Criminal Justice, Institutional
Division,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas

_____

February 19, 1997

Before POLITZ, Chief Judge, GARWOOD and DUHÉ, Circuit Judges.

POLITZ, Chief Judge:

Jessel Turner, a Texas death row inmate, seeks additional counsel, a stay of execution, and an evidentiary hearing on this, his first petition for federal habeas corpus relief. Finding Turner represented by very competent counsel and that he has received a full and fair hearing in state court, we deny that relief. In addition, because petitioner has not made a substantial showing of the denial of a federal right, we deny the requested Certificate of Probable Cause to appeal the district court's denial

of a writ of habeas corpus as well as the successor Certificate of Appealability.

**BACKGROUND**

Near midnight on February 10, 1986, Jessel Turner walked up to a gas station in Houston, Texas and sought a ride from Archie Holmes, the driver of a cab parked there. Holmes was off duty but he asked his dispatcher to send out another cab for Turner. Turner spoke with Tracy McGrew, an employee of the station, as he waited for the cab. In a few minutes a cab driven by Charles Hunter picked up Turner and departed. A short time later Jimmy Darks, another cab driver, found Hunter lying in the road a few hundred yards from the station. He had been shot to death; his cab was gone.

Meanwhile, Turner had returned to the station driving a Chevrolet Impala. Shortly after Turner left, Houston police officers, alerted about the homicide and informed of Hunter's last dispatch, arrived at the gas station. As they were interviewing McGrew, who was giving them a description of Turner and his vehicle, Turner drove by. The police gave pursuit and, after a brief car chase, stopped Turner and placed him under arrest.

Turner was taken to a police station and placed in a line-up. McGrew identified Turner as the man who had entered Hunter's cab at the gas station a few minutes before Hunter's death. Archie Holmes, while unable to identify Turner positively as Hunter's last cab fare, advised of a similarity in appearance.

2

Around 8:00 a.m., while in police custody, Turner signed a written statement claiming that he had not been involved in Hunter's death. Several hours later he signed a second statement asserting that Hunter had threatened him with a pistol and that the fatal wound had been inflicted as the two men struggled for control of the gun. In a third statement, made at 2:40 p.m. that day, Turner admitted that the murder weapon was his but he stated that Hunter was killed when the weapon accidentally discharged. Finally, Turner gave a fourth written statement in which he confessed to robbing and kidnapping two women on the night of Hunter's murder.

Hunter's cab was found at Turner's apartment complex; a fingerprint from Turner's left ring finger was recovered from the outside of the front passenger door. A .22 caliber pistol was found under the front seat of the Impala Turner was driving when he was arrested. Ballistics tests confirmed that this weapon fired the shot which killed Hunter.

On April 13, 1987, Turner went on trial for capital murder while in the course of committing and attempting to commit a robbery, in violation of Section 19.03(a)(2) of the Texas Penal Code. Turner's motions to suppress the pretrial identifications and his statements to the police were denied. At the guilt phase Holmes and McGrew identified Turner as the man who had entered Hunter's cab shortly before his murder. The state also presented redacted versions of Turner's four statements, forensic evidence

tying him to the crime,[1]."Single action" is the relevant mechanism when the pistol has been cocked, while "double action" describes the mechanism used to fire a round when it is uncocked. The pistol in question, a Saturday Night Special, has no safety. Given the significant pull needed to depress the trigger and fire a round when the weapon was uncocked, *i.e.* "double action," the expert testimony cast extreme doubt upon the proposition that the weapon was accidentally discharged.[2] and additional evidence of two extraneous armed robberies committed by Turner.

On April 23, 1987, the jury found Turner guilty of capital murder and the trial advanced into the punishment phase. The state presented significant other crimes evidence, including excerpts from Turner's four written statements. The only mitigating evidence Turner presented was testimony by two Harris County jailers that he was not a troublemaker and had helped restore order in the jail on several occasions. On April 27, 1987, the jury returned a unanimous affirmative response to the death penalty

---

[1]The state presented expert testimony to demonstrate that Turner had possessed the requisite intent to kill Hunter. C.E. Anderson, a firearms examiner with the Houston police department, testified that the trigger pull on the murder weapon was eight pounds on single action and nineteen pounds on double action,

and opined that
the act of firing the weapon "would have to be very intentional and pressure would have to be exerted to pull this trigger." Dr. Harminder S. Narula, the Harris County assistant medical examiner, testified that the absence of soot or gunpowder stippling on Hunter's body meant that the fatal bullet had been fired from "at least 24 inches away." Further expert testimony by a police department chemist related that no gunpowder or stippling had been found on Hunter's shirt and that therefore the shot that killed Hunter was fired from a distance of three to five feet away.

4

special issues and Turner was sentenced to death. His conviction and sentence were subsequently affirmed on direct appeal and the Supreme Court denied certiorari.[3]

On June 11, 1992, Turner sought a state writ of habeas corpus. On June 29, 1994, after an evidentiary hearing, the trial court entered factual findings and legal conclusions, recommending that relief be denied; the Court of Criminal Appeals denied relief on the basis of the trial court's findings.[4] Turner filed a second application on October 3, 1994, and a second evidentiary hearing was held on October 10, 1994. On November 2, 1994, the trial court again recommended that relief be denied and the Court of Criminal Appeals adopted that recommendation.[5]

Turner then filed the instant petition for federal habeas corpus relief, followed shortly thereafter by motions for a stay of execution and an evidentiary hearing. The state answered, filing a motion for summary judgment and a response to the request for a stay. The day before the scheduled execution the district court denied Turner's petition and declined to issue a Certificate of Probable Cause for appeal. Turner filed a notice of appeal, requested a CPC,[6] and sought and secured from this court a stay of

---

[3]*Turner v. State*, 805 S.W.2d 423 (Tex.Crim.App.), *cert. denied*, 502 U.S. 870 (1991).

[4]*Ex Parte Turner*, No. 26,853-01 (Tex.Crim.App. Sept. 7, 1994).

[5]*Ex Parte Turner*, No. 26,853-02 (Tex.Crim.App. Nov. 3, 1994).

[6]This case was briefed, argued and submitted for decision before April 24, 1996, the effective date of the AEDPA. *Brown v. Cain*, 104 F.3d 744 (5th Cir. 1997). If applicable, the standards contained therein would not change today's decision.

execution in order that we might appropriately review the matter.[7]

**ANALYSIS**

Turner first contends that the Supreme Court's recent decision in McFarland v. Scott[8] entitles him to the appointment of counsel and a stay order. Turner reads McFarland too expansively. The McFarland Court was concerned only with that period of time between the habeas petitioner's motion for the appointment of counsel and the filing of the initial petition. The Court reasoned that to preclude the issuance of a stay until a petition was filed would, as a practical matter, force the hasty and perhaps careless preparation and submission of a habeas petition merely to invoke the district court's power to enter a stay, a result inconsistent with section 848(q)(4)'s goal of providing effective legal representation for indigent capital defendants. Where, as here, a comprehensive petition has been filed, the mandate of McFarland has no application.[9] Turner has not established any "substantial

---

[7]Although this case is only before us on consideration of the application for a CPC, we have heard full oral argument from the parties to assist in today's disposition.

[8]512 U.S. 849, 114 S.Ct. 2568, 129 L.Ed.2d 666 (1994).

[9]Turner's section 848(q)(4) entitlement to the assistance of competent counsel in pursuing federal postconviction relief is not at issue because Turner has been very ably represented by counsel for many years, a period including the direct appeal in state court and the subsequent state postconviction proceedings. "There is no indication in the [*McFarland*] opinion that the Court's reading of the statute applies to the case of a well-counseled prisoner whose counsel, for technically admirable, though dilatory, reasons, wishes to obtain both the security of a stay of execution from a federal court while simultaneously reserving, rather than exercising and thus exhausting, his right to federal court review by petitioning for a writ of habeas corpus." *Steffen v. Tate*, 39 F.3d 622, 625 (6th Cir. 1994).

6

grounds upon which relief might be granted"[10] and we perceive no error in the district court's ruling.

Turner next claims that despite the two postconviction evidentiary hearings in state court, he is entitled to an evidentiary hearing in federal court. "A federal habeas court must allow discovery and an evidentiary hearing only where a factual dispute, if resolved in the petitioner's favor, would entitle him to relief and the state has not afforded the petitioner a full and fair evidentiary hearing."[11] If the petitioner has been afforded a full and fair hearing in state court he may still claim an evidentiary hearing in federal court if he can show cause and prejudice for his failure to develop the desired facts in state court, or if the failure to hold such a hearing would result in a miscarriage of justice.[12]

Turner, focusing upon the relatively short period between the filing of his second state habeas application and the evidentiary hearing thereon, complains that he was denied a full and fair hearing in state court because he was not allowed sufficient time to develop certain forensic evidence.[13] Turner's assertions,

---

[10]*Drew v. Scott*, 28 F.3d 460, 462 (5th Cir.), *cert. denied*, ___ U.S. ___, 115 S.Ct. 5, 129 L.Ed.2d 906 (1994), (*quoting* Delo v. Stokes, 495 U.S. 320, 321, 110 S.Ct. 1880, 1881, 109 L.Ed.2d 325 (1990)).

[11]*Ward v. Whitley*, 21 F.3d 1355, 1367 (5th Cir. 1994), *cert. denied*, ___ U.S. ___, 115 S.Ct. 1257, 131 L.Ed.2d 137 (1995).

[12]*Keeney v. Tamayo-Reyes*, 504 U.S. 1, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992).

[13]Turner suggests that if he were given sufficient time to gather and present unspecified forensic evidence he will be able to

however plausible, are nonresponsive to the essential question whether he received a full and fair hearing in state court. In determining whether a state hearing was full and fair, we do not consider only the nature of the evidence which might have been adduced but, rather, inquire whether any procedural or substantive barriers precluded a fair presentation of that evidence during the state proceeding.[14]

We previously have found the procedures governing Texas habeas corpus evidentiary hearings to be sufficient to produce a full and fair hearing.[15] The October 1994 evidentiary hearing was held specifically to address the claims of ineffective assistance of counsel raised in Turner's second state petition. At that hearing, Turner was represented by counsel familiar with the case and was afforded the opportunity to subpoena and question witnesses, submit exhibits and affidavits, cross-examine state witnesses, and generally to be heard. He received a full-blown evidentiary

---

cast doubt upon the State's medical and ballistics evidence which indicated that Turner intended to kill Hunter. This, in turn, would bolster his contention that trial counsel were ineffective in choosing a defense based upon the theory that Turner lacked the requisite intent to rob, rather than to kill, Hunter. We are impressed by the intensity of habeas counsels' efforts but are unpersuaded.

[14]*See Barnard v. Collins,* 13 F.3d 871, 877 (5th Cir.), *cert. denied*, 510 U.S. 1102, 114 S.Ct. 946, 127 L.Ed.2d 363 (1994)("an unexpected outcome does not automatically render the state *procedure* unfair - especially when Barnard was afforded a full-blown evidentiary hearing").

[15]*Andrews v. Collins*, 21 F.3d 612 (5th Cir. 1994), *cert. denied*,
115 S.Ct. 908 (1995).

hearing.[16]    Testimony from both of Turner's trial counsel were developed at that hearing and additional affidavits were entered into the record.

The record, and the opinions of the courts which have dealt with this case, make clear that the ballistics and medical testimony Turner challenges has been a matter of record since Turner's trial in 1987.  Turner has not alleged that the weakness or inadequacy which he perceives in this evidence was not previously known to him; thus, his contention that he had inadequate time to prepare forensic rebuttal evidence for either state evidentiary hearing simply is not persuasive.  Further, the record of the second evidentiary hearing reflects no request for a continuance so that such experts might be recruited.  Unless state adjudicatory officials or procedures somehow impeded Turner's ability to submit exhibits and to subpoena and fully question expert witnesses under oath, which the record before us belies, Turner's failure to present this evidence in the state hearing in no way discredits the full and fair nature of that hearing.[17]

---

[16]*Id.* at 619 (full and fair hearing when defendant was allowed "to present evidence and witnesses, to fully cross-examine witnesses called by the state, and, after the hearing's conclusion, to submit affidavits"); *Jernigan v. Collins*, 980 F.2d 292, 297 (5th Cir.) (defendant had a full and fair hearing when he was a party to the proceeding, was represented by counsel, and afforded every opportunity to be heard), *cert. denied*, 508 U.S. 978 (1993).

[17]Turner's right under 21 U.S.C. § 848(q)(9) to the assistance of experts where reasonably necessary to press his habeas claims does not entitle him to a federal evidentiary hearing when he has failed to comply with his duty under *Keeney v. Tamayo-Reyes* to develop his evidence in *state* court.  *Fearance v. Scott*, 56 F.3d 633 (5th Cir.), *cert. denied*, ___ U.S. ___, 115 S.Ct. 2603, 132 L.Ed.2d 847 (1995).

9

Insofar as Turner is unable to show that the state evidentiary hearings were anything other than full and fair, we must determine whether cause and prejudice exist for Turner's failure to present the proffered evidence, or whether a miscarriage of justice would result from the absence of a federal hearing. Neither Turner nor the record suggest that "'some objective factor external to the defense impeded counsel's efforts' to develop the evidence;"[18] thus, Turner has not shown cause for his failure to develop the evidence adequately in state court. Similarly, Turner "cannot show that the absence of a federal evidentiary hearing has resulted in a fundamental miscarriage of justice."[19] Based upon these findings, we conclude that Turner's demand for an evidentiary hearing lacks merit.

Turner next maintains that the district court's dismissal of his lawsuit was improper because he did not receive ten days notice of the court's action as provided by Fed.R.Civ.P. 56(c) which details the procedure for obtaining summary judgment. Turner contends that under Fed.R.Civ.P. 81(a)(2)[20] and Habeas Rule 11[21] the

---

[18]*Jernigan* at 297 *(quoting McCleskey v. Zant*, 499 U.S. 467, 493, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991)).

[19]*Id.* For this exception to apply, Turner "would have to demonstrate 'by clear and convincing evidence that but for a constitutional error, no reasonable juror would have found [him] eligible for the death penalty.'" *Id.* (*quoting Sawyer v. Whitley*, 505 U.S. 333, 335, 112 S.Ct. 2514, 2517, 120 L.Ed.2d 269 (1992)). Turner's showing, which we conclude does not demonstrate probable cause for an appeal, falls far short of this exacting standard.

[20]"These rules are applicable to proceedings for admission to citizenship, habeas corpus, and quo warranto, to the extent that the practice in such proceedings is not set forth in statutes of the United States and has heretofore conformed to the practice in

10

notice requirement of Rule 56(c) applied.  Turner further claims that he was prejudiced by the lack of notice because he had insufficient time to respond to the state's copious 112-page motion for summary judgment, which Turner contends was filled with errors and misrepresentations.

Turner's case was dismissed under Habeas Rule 8(a), which directs a district court, "after the answer and the transcript and record of state court proceedings are filed," to "make such disposition of the petition as justice shall require."  Despite the summary nature of this disposition, in *Norman v. McCotter*[22] we held that a dismissal under Rule 8(a) may not transpire "on the basis of the non-pleading factual showing of one party, without notice to the other and an opportunity by him to respond by controverting factual showing."[23]  We found the error in *McCotter* to be harmless, however, determining, after a review of the appellate record, that even with a ten-day notice defendant would not have avoided adverse summary judgment.[24]

We clarified the rule governing the applicability of this

_____

civil actions."  Fed.R.Civ.P. 81(a)(2).

[21]∎"The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with these rules, may be applied, where appropriate, to petitions filed under these rules."  Rules Governing § 2254 Cases, Rule 11, 28 U.S.C. foll. § 2254.

[22]765 F.2d 504 (5th Cir. 1985).

[23]*Id* at 507*.*  In *McDonnell v. Estelle*, 666 F.2d 246 (5th Cir. 1982), we applied the Rule 56(c) notice requirement to a motion to dismiss under Habeas Rule 9(a).

[24]*Norman* at 508.

notice requirement to Rule 8(a) dismissals in *Dillard v. Blackburn*.[25]  In *Dillard*, after noting that there is clearly no requirement for notice prior to every dismissal of a habeas petition, we determined that the question was one to be decided on a case-by-case basis:

> Many habeas cases can be resolved on issues that are fully determinable from the record and from the law.  The question facing us is whether the district court in this case was required to give Dillard ten days' notice before dismissing the petition.  To resolve this question we look to the purpose and effect of the Rule 56(c) notice provision and ask whether Dillard has suffered any disadvantage by not having been given specific notice that his habeas petition might be dismissed finally as a summary judgment.[26]

In *Dillard*, as in *Norman*, we found that no notice was required, expressly holding that "the ten day notice [provision] ... is not required in habeas cases where the petitioner never claims the benefit of notice, never claims to have been disadvantaged by the lack of notice, and where the court is satisfied that he has not been so disadvantaged."[27]

There is no question that Rule 56(c) potentially is applicable here, considering that in dismissing Turner's petition the district court relied upon matters outside of the pleadings,[28] in particular

---

[25]780 F.2d 509 (5th Cir. 1986).

[26]*Id.* at 515.

[27]*Id*. at 515-16.

[28]Federal Rule of Civil Procedure 12(c) provides that the summary judgment procedures of Rule 56 are applicable if "matters outside the pleadings are presented to and not excluded by the court."  The term "pleadings" is defined by Rule 7(a) to include a complaint and an answer.  It is noteworthy that an "answer," in the context of a habeas corpus proceeding, is defined by Habeas Rule 5

12

the state's motion for summary judgment.  When we review the relevant facts of this case in light of the *Dillard* analysis, however, we must conclude that no notice was required.

"The purpose of the notice provision in Rule 56(c) is to give the nonmoving party a reasonable opportunity to submit opposing material to create a genuine issue of material fact."[29]  The only "opposing material" Turner points to in his brief is the speculation that something might be adduced in a federal evidentiary hearing.  The district court ruled that Turner may not invoke such a hearing.  We find no basis whatever for a reversal of that ruling.

We now address the district court's dismissal of Turner's petition and its denial of a CPC, and the application to us for a CPC without which we have no appellate jurisdiction.[30]  To secure appellate review, Turner must make a substantial showing of the denial of a federal right.[31]  "This standard does not require petitioner to show that he would prevail on the merits, but does require him to show the issues presented are debatable among

---

to include not only the bare answer of the state, but also relevant portions of the record.  Both *Norman* and *Dillard*, like the instant case, involved extraneous state memoranda or motions outside the definition of an answer found in Habeas Rule 5, and thus those judgments were rendered in part upon consideration of matters outside the pleadings.

[29]*Dillard* at 515.

[30]Fed.R.App.P. 22(b); *Montoya v. Collins*, 988 F.2d 11 (5th Cir.), *cert. denied*, 507 U.S. 1007, 113 S.Ct. 1630, 123 L.Ed.2d 263 (1993).

[31]*Barefoot v. Estelle*, 463 U.S. 880, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983).

13

jurists of reason."[32]  In addition, "[a]lthough in a capital case the court may properly consider the nature of the penalty in deciding whether to grant CPC, this alone does not suffice to justify issuing a certificate."[33]

Turner's first claim is composed of a litany of particular instances of trial counsels' alleged ineffective assistance.[34]  We must analyze this submission under the two-pronged test for ineffective assistance of counsel set out in *Strickland v. Washington*.[35]  The first prong of this test mandates that we find that counsel's performance was deficient; in making this determination, we consider the particular circumstances of the case as viewed from counsels' perspective in light of the prevailing professional norms at the time of trial in order to discern whether counsels' performance fell below an "objective standard of reasonableness."[36]  If deficient performance is demonstrated, then

---

[32]*Drew v. Collins*, 5 F.3d 93, 95 (5th Cir.), *cert. denied*, 510 U.S. 1171, 114 S.Ct. 1207, 127 L.Ed.2d 555 (1994) (*citing Barefoot*).

[33]*Jacobs v. Scott*, 31 F.3d 1319, 1323 (5th Cir.), *cert. denied*, ___ U.S. ___, 115 S.Ct. 711, 130 L.Ed.2d 618 (1995).

[34]Turner's brief does not discuss the multitude of these alleged failures of representation.  Rather than consider them abandoned, which is the customary procedure, because of Turner's status as a death row inmate we exercise our discretion and elect to examine his pleadings and the record to determine whether any cognizable claims bearing upon his conviction or sentence are extant.

[35]466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

[36]*Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir.), *cert. denied*, ____ U.S. ____, 115 S.Ct. 418, 130 L.Ed.2d 333 (1994) (*quoting Strickland*).

14

the petitioner must show prejudice, defined by *Strickland* as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different."[37]

The only ineffectiveness claim addressed in any detail by Turner's brief centers around trial counsels' purported failure to make an adequate investigation. Turner now contends that had counsel done so, they would have realized that a defense attacking the intent to kill element of the offense offered the best prospect of success. The evidentiary basis for this claim consists of Turner's second and third written statements to the police, and the statements of two alleged eyewitnesses to the crime, Roosevelt Turner and Derek Franklin, who claimed in interviews with the police and a defense investigator that they had seen Turner and Hunter struggling in the taxi prior to the murder.[38] Turner theorizes that with these two witnesses to corroborate his statements to the police a successful defense could have been mounted.

---

[37]*Strickland* at 694.

[38]This story was repeated in an affidavit by Franklin entered into the record at the second evidentiary hearing. According to this affidavit, Franklin and Roosevelt Turner departed Turner's company just before he was picked up at the gas station by Hunter. Franklin and Roosevelt Turner followed the cab until it stopped to let Turner out, at which point Franklin and Roosevelt Turner passed the cab and drove around the block for another look. At that time, Franklin stated that he and Roosevelt Turner saw Turner and Hunter struggling in the cab. Franklin and Roosevelt Turner slowed down to help Turner, but because there were other cars behind them they were forced to go around the block again. When they returned the second time, they saw Hunter's body in the road. This affidavit repeats the essence of the statements of Roosevelt Turner and Franklin from February of 1986.

15

Although Turner characterizes this claim as failure of counsel to investigate, he is, rather, seeking to second guess their trial strategy. The testimony of the trial attorneys at the second evidentiary hearing makes it abundantly clear that they reviewed the reports of the police and their investigator regarding Roosevelt Turner and Franklin. They knew that these prospective witnesses had seen Turner struggling with Hunter prior to his murder.[39] The question thus becomes whether the trial strategy they ultimately pursued was reasonable given the information available to them. We perforce conclude that it was.

Turner's argument is premised upon an analytical framework which, focused as it is upon the two intent elements of the capital murder charge, ignores other issues material to his culpability. For example, the record reveals that counsels' primary focus early in the trial was upon the issue of identity. Trial counsel attempted first to suppress the pretrial identifications of Turner and then attacked those identifications during trial. They also moved to suppress Turner's inculpatory statements, the only evidence placing Turner with Hunter when he was shot, and continued to challenge the veracity and reliability of those statements after they were admitted by bringing to the jury's attention Turner's lack of education and sleep and food deprivation. Finally, the defense moved to suppress the murder weapon, which could be tied to Turner. While these efforts ultimately failed, that result was not

_____

[39]At trial Turner's counsel questioned several police officers regarding their interviews of Roosevelt Turner and Franklin.

16

a foregone conclusion; each exhibited a reasonable chance of success, and a contrary result on any might have raised a reasonable doubt among members of the jury.

As to trial counsels' attack on the intent to rob element of the offense, the defense underscored that there was no evidence that any money was taken,[40] and reasonably argued that Turner's theft of the cab was part of his flight and not a premeditated attempt to steal the cab. While evidence of two extraneous offenses was admitted to show Turner's intent to rob Hunter, the admissibility of those offenses was, like the result of the various suppression motions, not written in stone. The record discloses that trial counsel brought to the judge's attention precedent that the judge recognized was contrary to his ruling. In short, Turner's trial counsel mounted a broad defense which offered several possibilities of raising reasonable doubt among members of the jury as to various elements of the offense. We cannot conclude that such a course of action was objectively unreasonable.

Our conclusion is not changed by comparing trial counsels' strategy to the alternative strategy Turner now proffers. The state's forensic evidence cast extreme doubt upon the ability of the defense to disprove that Turner's action in shooting Hunter was anything other than deliberate. The nature of that evidence, and the lack of any credible challenge that it was unreliable or

---

[40]Trial counsel elicited testimony from Jimmy Darks, the cab driver who found Hunter's body, that no money was missing from the cab, and from police officers that Hunter did not appear to have been robbed.

17

fraudulently obtained, made trial counsels' decision not to expend vital resources in trying to rebut it a reasonable one. Even if Turner's current effort to conjure up controverting forensic evidence were successful, it would not render trial counsels' decision objectively unreasonable.

Turner's submission, therefore, is that trial counsel acted unreasonably when they decided not to present a defense which: (1) conceded identity and intent to rob, (2) relied upon the inconclusive testimony of two questionable witnesses, and (3) was controverted by considerable forensic evidence. This contention does not present a debatable question for reasonable jurists. Our conclusion is inexorable; Turner's trial counsel did not perform deficiently.[41]

Turner next challenges the trial court's jury instruction on the intentional element of capital murder. To circumvent the Texas courts' refusal to consider the claim for lack of timely objection, Turner asserts counsels' ineffectiveness as cause and prejudice for his procedural default.[42] On direct appeal the Texas Court of Criminal Appeals found no reversible error in the instruction as a

---

[41]For this reason Turner's claim that trial counsel were ineffective for failing to request a jury instruction on the lesser included offense of felony murder is also meritless. *See Anderson v. Collins*, 18 F.3d 1208 (5th Cir. 1994).

[42]*Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). Turner's submission that Texas' contemporaneous objection rule is not an "independent and adequate state ground" upon which to base a procedural default is foreclosed by our opinion in *Amos v. Scott,* 61 F.3d 333 (5th Cir.), *cert. denied*, 116 S.Ct. 557 (1995).

18

matter of state law[43] and we discern no cognizable claim under federal constitutional law.[44]  Given this, Turner can demonstrate neither prejudice under *Strickland* nor cause for the procedural default.

The next grouping of ineffectiveness claims proffered by Turner relate to the punishment phase of the trial.  Turner submits that trial counsel failed to investigate, develop, and present mitigating evidence properly at the punishment phase.  He points to a number of prospective witnesses who now maintain, *via* affidavit, that they would have testified that Turner had good qualities and was not a troublemaker.  The record, however, supports the state habeas court's determination that each of these proffered witnesses ran the risk of harming Turner more than helping him and that the decision not to call them was the product of a reasonable trial strategy.  "[F]ailure to present mitigating evidence 'if based on

[43]*Turner*, 805 S.W.2d at 428-30.  Turner based his claim that the instruction was erroneous  on *Alvarado v. State*, 704 S.W.2d 36 (Tex.Crim.App. 1986) (en banc).  The Court of Criminal Appeals found the more recent case of *Kinnamon v. State*, 791 S.W.2d 84 (Tex.Crim.App. 1990), to be controlling, and accordingly rejected Turner's claim.  A concurrence to the denial of Turner's motion for rehearing noted that *Kinnamon* was wrongly decided in light of *Alvarado*.  The concurrence observed, however, that in Turner's case, considering the error in the context of the instruction as a whole, "there was no egregious harm . . . and the correct result was reached."  *Turner* at 432.

[44]*See Victor v. Nebraska*, 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994) (indefinite instruction is not erroneous unless there is "reasonable likelihood" that jury drew improper conclusions from that instruction)*; Henderson v. Kibbe*, 431 U.S. 145, 97 S.Ct. 1730, 62 L.Ed.2d 203 (1977) (to obtain federal habeas corpus for
erroneous jury instruction petitioner must prove instruction "by itself so infected the entire trial that the resulting conviction violates due process").

an informed and reasoned practical judgment, is well within the range of practical choices not to be second-guessed'" and thus cannot constitute deficient performance.[45]

Turner also cites trial counsels' failure to object to certain portions of the prosecutor's closing argument as an example of their ineffectiveness. Turner, again, seeks to demonstrate the ineffectiveness of counsel to show cause and prejudice and thus elude the state procedural bar. Based upon our review of the relevant portions of the record we conclude that even if this issue had been preserved for direct appeal, the error would have been held to be harmless;[46] thus, Turner cannot demonstrate *Strickland* prejudice. Turner similarly has failed to meet the test for federal habeas relief applicable to improper prosecutorial argument, *i.e.*, that "the misconduct [was] persistent and pronounced or that the evidence of guilt was so insubstantial" that but for the improper remarks the conviction or sentence would not

---

[45]*Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992), *cert. denied*, 509 U.S. 921, 113 S.Ct. 3035, 125 L.Ed.2d 722 (1993) *(quoting Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985)).

[46]To ascertain whether improper prosecutorial conduct is harmless error, the Texas Court of Criminal Appeals has mandated that courts "consider the nature and source of the error, the degree the prosecutor emphasized the erroneous jury argument, probable collateral implications, how much weight a juror placed on the erroneous jury argument, and whether holding the improper jury argument harmless would encourage the State to repeat it." *Coble v. State*, 871 S.W.2d 192, 206 (Tex.Crim.App. 1993), *cert. denied*, __ U.S. ___, 115 S.Ct. 101, 130 L.Ed.2d 50 (1994). In this case, the record shows the comments pointed out by Turner were minor and fleeting, did not evidence any intentional misconduct by the prosecutor, and were overshadowed by proper argument and the jury charge.

have resulted.[47]

The remainder of Turner's ineffectiveness of counsel claim consists of challenges to trial counsels' failure to object to a multitude of perceived improprieties. Our review of the record persuades that these alleged failures either did not occur, did not constitute deficient performance, or did not affect the outcome of the trial. For these reasons we find insufficient support for an appeal of the district court's finding that Turner's claim of ineffective assistance of counsel lacks merit.

Moving to the balance of Turner's petition, we consider his claim that the eighth and fourteenth amendments required that the unadjudicated offenses entered into evidence during the punishment phase of his trial be proven beyond a reasonable doubt. Although Turner frankly admits that neither this court nor the State of Texas currently have such a requirement, he contends that it is dictated by Supreme Court precedent. We are not persuaded. Although the due process clause requires the state to prove each element of the offense charged beyond a reasonable doubt to secure a conviction,[48] neither this court nor the Supreme Court has ever held that a similar burden exists regarding the proof of facts adduced during the sentencing phase. The precedents are to the

---

[47]*Jones v. Butler*, 864 F.2d 348, 356 (5th Cir. 1988), *cert. denied*, 490 U.S. 1075, 109 S.Ct. 2090, 104 L.Ed.2d 653 (1989) *(citing Felde v. Blackburn*, 795 F.2d 400 (5th Cir.), *cert. denied*, 484 U.S. 873 (1987)).

[48]*See In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

contrary.[49]

Turner next claims that the jury was not properly instructed to consider mitigating evidence when determining the special issues. Relying upon our decision in *Spivey v. Zant*,[50] Turner focuses upon the fact that the word "mitigating" was not used in the jury charge for the punishment phase. He ignores the fact that *Spivey* expressly approved of Texas' capital sentencing scheme, finding it to be a prime example of a system which focuses the jury's attention upon the offense and the offender in such a way as to obviate any need for "explicit discussion of mitigating circumstances."[51] Turner's submission to the contrary is without merit.

Turner claims as constitutional error the trial court's failure to define reasonable doubt in its instructions to the jury. In *Victor v. Nebraska*[52] the Supreme Court made it clear that "[t]he beyond a reasonable doubt standard is a requirement of due process, but the Constitution neither prohibits trial courts from defining reasonable doubt *nor requires them to do so as a matter of*

---

[49]*See Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988) (jury may hear relevant evidence of unadjudicated extraneous offenses if the court concludes, after examining all the evidence, that the jury reasonably could find that the accused committed the offense by a preponderance of the evidence); *United States v. Mir*, 919 F.2d 940, 943 (5th Cir. 1993) (any unadjudicated conduct considered in determining sentence must be supported by a preponderance of the evidence).

[50]661 F.2d 464 (5th Cir. Unit B 1981), *cert. denied*, 458 U.S. 1111, 102 S.Ct. 3495, 73 L.Ed.2d 1374 (1982).

[51]*Id* at 471.

[52]511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994).

22

*course."*[53]

Turner attacks the statutory special issues under the rule of *Penry v. Lynaugh*,[54] contending that the jury was prevented from considering the mitigating effect of his youth and good behavior during his pretrial detention. Turner misapprehends the reach of *Penry.* To qualify for the special exception to the scope of the special issues carved out by *Penry*, proffered evidence must demonstrate a "uniquely severe permanent handicap ... with which the defendant was burdened through no fault of his own."[55] Further, we have made it clear that, for evidence to have mitigating relevance to the special issues, there must be a nexus between the mitigating evidence and the criminal act.[56] Turner's submission manifestly does not fall within the scope of *Penry* and is not dictated by this court's precedents. Granting Turner the relief he here seeks would create a new rule of constitutional law on habeas review.[57]

In a related vein Turner challenges the constitutionality of the Texas special issues on the ground that, *Penry* evidence aside, they do not provide the jury with an adequate means to consider all

---

[53]*Id.* at 5 (*emphasis added*).

[54]492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989).

[55]*Graham v. Collins*, 950 F.2d 1009, 1029 (5th Cir. 1992) (en banc), *aff'd on other grounds*, 506 U.S. 461, 113 S.Ct. 892, 122 L.Ed.2d 260 (1993).

[56]*Davis v. Scott*, 51 F.3d 457 (5th Cir.), *cert. denied*, 116 S.Ct. 525 (1995).

[57]*Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 256 (1989); *Motley*.

mitigating evidence presented.  We consider this claim foreclosed by the Supreme Court's decision in *Jurek v. Texas.*[58]

Our reading of the Court of Criminal Appeals' disposition of Turner's second state *habeas* application satisfies that a number of Turner's claims are procedurally barred.[59]  Because neither Turner nor the record suggest that there exists cause and prejudice for these procedural defaults,[60] or that the failure to consider these issues would result in a miscarriage of justice,[61] we are barred from considering these claims.[62]

Finally, Turner assigns as error the district court's order denying him leave to amend his petition to add yet another claim. The claim involved is one of ineffective assistance of counsel on

---

[58]428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976) (upholding the Texas capital sentencing procedures against eighth and fourteenth amendment challenges).  *See Penry* at 315 ("Penry does not challenge the facial validity of the Texas death penalty statute, which was upheld against an Eighth Amendment challenge in *Jurek v. Texas*").

[59]These claims include a challenge to the framework within which the Court of Criminal Appeals reviews the sufficiency of the evidence in support of an affirmative finding on the special issues; an attack on a jury instruction regarding the need under Texas law for ten jurors to concur in order to render a "no" verdict on the special issues; a claim that V.A.A.C.P. Art. 35.13 unconstitutionally prevented Turner from exercising his peremptory challenges at the conclusion of *voir dire*; a claim that the jury charge relieved the state from proving every element of the offense by failing to properly define *mens rea*; and a claim that the jury charge led the jury to misunderstand the concept of deliberate conduct.

[60]*Wainwright v. Sykes*, 433 U.S. 72 (1977).

[61]*Schlup v.* Delo, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).

[62]*Amos v. Scott*, 61 F.3d 333 (5th Cir.), *cert. denied*, 116 S.Ct. 557 (1995).

Turner's direct appeal, and is premised upon appellate counsel's failure to raise the so-called *Palafox* rule[63] in relation to the sufficiency of the evidence sustaining Turner's conviction. Turner does not dispute that this rule no longer exists, having been abrogated by the adoption of the Texas Rules of Criminal Evidence in 1986.[64] We must conclude that the district court did not err by denying Turner leave to add this meritless claim to his petition.

For the foregoing reasons, we DENY Turner's requests for the appointment of counsel and for an evidentiary hearing. Further, because we find that the proffered claims do not contain any indicia of merit and therefore make no substantial showing of the denial of a federal right, we DENY Turner's application for a Certificate of Probable Cause. Were we to deem it an application for a Certificate of Appealability it likewise would be DENIED.

---

[63]*Palafox v. State*, 608 S.W.2d 177 (Tex.Crim.App. 1979) (en banc). This rule requires the state to disprove beyond a reasonable doubt exculpatory information contained in a defendant's confession.

[64]*Moody v. State*, 827 S.W.2d 875 (Tex.Crim.App.), *cert. denied*, 506 U.S. 839 (1992).