**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 01-40500**
_____

**RICHARD DINKINS,**

**Petitioner-Appellant,**

**versus**

**JANIE COCKRELL, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE,**
**INSTITUTIONAL DIVISION,**

**Respondent-Appellee.**

**Appeal from the United States District Court**
**for the Eastern District of Texas**
**(5:98-CV-172)**

March 28, 2002

Before JONES, BARKSDALE, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Pursuant to a certificate of appealability (COA) granted by the district court, Richard Dinkins, convicted of capital murder and sentenced to death, contests the denial of federal habeas relief, contending that punishment-phase jury instructions given pursuant to the pre-amended TEX. CODE CRIM. PROC. art. 37.071 *and* ***Penry v. Lynaugh***, 492 U.S. 302 (1989) (***Penry I***), violated the Eighth and Fourteenth Amendments by preventing the jury from

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

adequately considering the favorable conduct and character mitigating evidence he presented. **AFFIRMED**.

I.

On 12 September 1990, a massage therapist and client were found shot at the therapist's office in Beaumont, Texas; they died shortly thereafter. At the scene, police discovered: an appointment book listing an appointment with a "Ricky Dennis" earlier that evening; and a client application form for a "Ricky Dinkins", including his place of employment and a telephone number.

The next day investigators for the Beaumont police and district attorney questioned Dinkins and arrested him on an outstanding misdemeanor warrant. Later that day, Dinkins consented to a search of his automobile, from which a .357 revolver and two boxes of ammunition were seized.

The following day (14 September), after obtaining Dinkins' consent, the investigators searched Dinkins' home, in his presence, and discovered a pair of blood-stained trousers. Shortly thereafter, Dinkins gave a statement inculpating himself in the murders. Dinkins was indicted that October. At trial in 1992, it was further established that: the blood on Dinkins' trousers matched the blood type of one of the victims; the .357 revolver was sold to Dinkins the day before the murders; and slugs recovered from the crime scene were fired from that revolver. Additionally, a witness testified that, on the evening of the murders, he saw

2

Dinkins enter his automobile and drive away from the crime scene. The jury convicted Dinkins of capital murder.

During the punishment phase, the State presented two witnesses — the investigators who had handled the case. They testified about the details of the murder and Dinkins' demeanor during the investigation.

Dinkins presented ten character witnesses. They testified that: he is not a violent or dangerous person; he is a "nice boy" and a "compassionate individual" with a "good personality"; he often helped care for his parents and grandparents; he "did things" for a woman and her husband and "would not take payment for it"; he had no disciplinary problems during his pre-trial incarceration and had reported a possible jail break; he once gave a woman a cigarette lighter because she had lost her husband's; and he served in the Air Force for approximately four years as an Air Policeman and was "parachute qualified".

The judge instructed the jury on three special issues, in accordance with TEX. CODE CRIM. PROC. ANN. art. 37.071 (Vernon 1981), which provided, in pertinent part:

> (b) On conclusion of the presentation of the evidence [in a capital trial where the state seeks the death penalty], the court shall submit the following issues to the jury:
>
> (1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;

(2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society [*future dangerousness*]; and

(3) if raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased.

In addition to the three statutorily-mandated issues, and in an effort to comply with **Penry I** (1998), discussed *infra*, the district court provided a supplemental instruction:

In making these decisions, you are instructed that you can consider any evidence which, in your opinion, mitigates against an answer of "yes" to each issue, including any aspects of the Defendant's character or record, and any of the circumstances of the commission of this offense which you find to be mitigating. And if such evidence causes you to have a reasonable doubt as to any issue, you are required to answer that issue "no".

Contrary to the record, and without explanation, Dinkins' brief quotes an entirely different supplemental instruction. Apparently, this is an attempt to analogize his case to **Penry v. Johnson**, 121 S. Ct. 1910 (2001) *(**Penry II**)*.

The jury answered the three statutorily-mandated special issues affirmatively. (Dinkins incorrectly states that only the first two special issues were submitted to the jury.) Accordingly, Dinkins was sentenced to death.

The Texas Court of Criminal Appeals affirmed the conviction and sentence, and the Supreme Court denied certiorari. ***Dinkins v.***

4

*State*, 894 S.W.2d 330, 361 (Tex. Crim. App.) (en banc), *cert. denied*, 516 U.S. 832 (1995).

Dinkins sought state habeas relief, presenting, *inter alia*, the issue for which the COA was later granted by the district court:  that the punishment-phase instructions precluded the jury from adequately considering mitigating evidence, in violation of the Eighth and Fourteenth Amendments (**Penry** claim).  The habeas court recommended denying relief, finding Dinkins had "failed ... to allege any facts which would bring his Claim within the scope of" **Penry I**, and that, consequently, the **Penry** claim was "not entitled to consideration because it fails to allege any facts that would support it".  **Ex Parte Dinkins**, Writ No. 56212-A (252d D. Ct. 23 July 1998).  The Court of Criminal Appeals adopted the findings and conclusions and denied relief.  **Ex parte Dinkins**, No. 38671-01 (Tex. Crim. App. 4 Nov. 1998).

Dinkins filed for federal habeas relief in November 1998.  A magistrate judge recommended denial.  For the **Penry** claim, the magistrate judge found that the charge afforded the jury sufficient latitude to consider the relevant mitigating evidence.  In March 2001, after a *de novo* review and over Dinkins' objections, the district court adopted the report and recommendation and granted the State's motion for summary judgment.

**Penry II** was rendered post-judgment.  In the light of **Penry II**, the district court granted a COA in June 2001.

5

II.

"Summary judgment is appropriate if the record discloses 'that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" **Williams v. Scott**, 35 F.3d 159, 161 (5th Cir. 1994) (quoting FED. R. CIV. P. 56(c)), *cert. denied*, 513 U.S. 1137 (1995). In a federal habeas appeal, "[w]e review the district court's grant of summary judgment *de novo*". **Id.** We do so "applying the same standard of review to the state court's decision as the district court". **Thompson v. Cain**, 161 F.3d 802, 805 (5th Cir. 1998).

"[B]ecause [Dinkins] filed his federal habeas petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ..., Pub. L. 104-132, 110 Stat. 1214 (1996), the statute applies to his case". **Martinez v. Johnson**, 255 F.3d 229, 237 (5th Cir. 2001), *cert. denied*, No. 01-7408, 2002 WL 257045 (U.S. 25 Feb. 2002). But, the point at which Dinkins first raised his **Penry** claim, and the grounds on which the state courts disposed of it, are not entirely clear. Of course, whether a state court has "adjudicated [the claim] on the merits" affects the deference federal courts are to afford the state court's decision. 28 U.S.C. § 2254(d). We need not decide what deference to afford, however. Even affording none, Dinkins' **Penry** claim fails.

Subsequent to **Penry I** (1989), discussed below, Texas amended art. 37.071. The jury is now instructed, *inter alia*, to determine

6

"[w]hether, taking into consideration all of the evidence, ... there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed". TEX. CODE CRIM. PROC. ANN. art. 37.071(e)(1) (Vernon Supp. 2002). The amendments, however, apply only for capital offenses subsequent to 31 August 1991. *Id*. art. 37.071(i). Dinkins committed the murders prior to that date.

A.

*Penry I* involved an as-applied, Eighth and Fourteenth Amendment challenge to the special issues in the pre-amended art. 37.071. During the punishment phase, Penry offered mitigating evidence of mental retardation and childhood abuse. The jury was instructed in accordance with pre-amended art. 37.071. But despite a request by Penry, it "was never instructed that it could consider the evidence [he] offered ... as mitigating evidence and that it could give mitigating effect to that evidence in imposing sentence". *Penry I*, 492 U.S. at 320.

The Court reiterated its holding from *Lockett v. Ohio*, 438 U.S. 586 (1978), and *Eddings v. Oklahoma*, 455 U.S. 104 (1982): the Eighth and Fourteenth Amendments require a State to permit a jury to "consider[] and giv[e] effect to evidence relevant to the defendant's background or character or to the circumstances of the offense that mitigate against imposing the death penalty". *Penry I*, 492 U.S. at 318. The Court then analyzed each of the three

7

special issues and held:  the mitigating evidence presented by Penry, particularly that of his retardation, had relevance beyond the special issues; and the jury, in the absence of further instruction, "was not provided with a vehicle for expressing its 'reasoned moral response' to that evidence in rendering its sentencing decision".  *Id.* at 328 (quoting *California v. Brown*, 479 U.S. 538, 545 (1987) (O'Connor, J., concurring)).

Our court has read *Penry I* as follows:

> According to the [*Penry I*] Court, in the absence of an instruction defining the term "deliberately" in the first special issue, the jury may have been precluded from giving effect to their possible opinion that Penry's mental retardation and history of childhood abuse made him "less able than a normal adult to control his impulses or to evaluate the consequences of his conduct" and thus less personally culpable.  With respect to the second issue [future dangerousness], the Court found that the mitigating evidence was a double-edged sword:  it mitigated his culpability and at the same time it indicated that he would be dangerous in the future. Finally, the evidence was not relevant to the third issue [response to provocation by deceased].  The Court concluded that the state court erred by not instructing the jury that it could consider and give effect to the mitigating evidence of Penry's mental retardation and childhood abuse by declining to impose the death sentence.

*Lackey v. Scott*, 28 F.3d 486, 488 (5th Cir. 1994) (quoting *Penry I*, 492 U.S. at 323; internal citations omitted), *cert. denied*, 513 U.S. 1086 (1995).

8

Texas retried Penry in 1990; he was again convicted of capital murder. During the punishment phase of that second trial, Penry again proffered evidence of his mental retardation and childhood abuse. *See Penry II*, 121 S. Ct. at 1916. In an effort to comply with *Penry I*, and in addition to the three statutorily-mandated special issues, the trial court gave a supplemental instruction, directing the jury, in answering the special issues, to give effect to any mitigating circumstances. *See id.* at 1917. (Likewise, as noted, at Dinkins' trial, and in the light of *Penry I*, a mitigating evidence supplemental instruction was given.)

*Penry II* held, however, that the supplemental instruction failed to satisfy *Penry I*: "that the jury be able to 'consider and *give effect to* [a defendant's mitigating] evidence in imposing sentence'". *Id.* at 1920 (emphasis and alteration in original; quoting *Penry I*, 492 U.S. at 319). The Court found useless any attempt by the supplemental instruction to prompt the jurors "to take Penry's mitigating evidence into account in determining their truthful answers to each special issue", because, as *Penry I* had held, "none of the special issues is broad enough to provide a vehicle for the jury to give mitigating effect to the evidence of Penry's mental retardation and childhood abuse". *Penry II*, 121 S. Ct. at 1921. And, to the extent the instruction attempted to inform the jury "it could simply answer one of the special issues 'no' if it believed that mitigating  circumstances made a life

9

sentence ... appropriate ... regardless of its initial answers to the questions", *id.*, the Court concluded the instruction, in conjunction with the special issues, rendered the overall jury charge internally contradictory, making it "logically and ethically impossible for a juror to follow both sets of instructions", *id.* at 1922.

As noted, **Penry II** was rendered *after* the district court denied habeas relief in the case at hand. Accordingly, it granted the COA concerning the mitigating evidence Dinkins had presented.

B.

Dinkins claims that his jury received a supplemental instruction "virtually identical" to that in **Penry II**; and that, evaluated contextually, it failed to allow the jury to consider and give effect to mitigating evidence of "his heroic and honorable service in his country's armed forces, numerous good deeds in his community, and testimony concerning his good character". (Again, Dinkins' supplemental instruction was *not* "virtually identical" to that in **Penry II**.)

1.

Dinkins does not address whether, for purposes of his **Penry** claim, the cited mitigating evidence is "constitutionally relevant mitigating evidence". As explained in **Madden v. Collins**, 18 F.3d 304 (5th Cir. 1994), *cert. denied*, 513 U.S. 1156 (1995):

10

> To grant relief on a *Penry* claim, we must determine (1) that the proffered evidence was *constitutionally relevant mitigating evidence*, and, if so, (2) that the proffered evidence was beyond the "effective reach" of the jurors. Thus rejection of a *Penry* claim does not necessarily mean in every case that the jury was able to evaluate the proffered evidence fully and fairly. *A **Penry** claim rejection may also be based on the failure of the evidence relied upon by the petitioner to be constitutionally relevant mitigating evidence.*

*Id.* at 308 (citing **Johnson v. Texas**, 509 U.S. 350 (1993); footnote omitted; second emphasis added).

The necessity and logic of our court's **Penry I** jurisprudence — and specifically the two-step inquiry described in **Madden** — was not altered by **Penry II**. It simply held that the supplemental jury instruction given in that case was not sufficient to correct the specific deficiency recognized in **Penry I**. *See **Penry II***, 121 S. Ct. at 1921-22.

In order to determine whether the mitigating evidence is "constitutionally relevant", we must ask whether "the evidence implicate[s] the basic concern of **Penry** 'that defendants who commit criminal acts that are *attributable to a disadvantaged background, or to emotional and mental problems*, may be less culpable than defendants who have no such excuse'". **Madden,** 18 F.3d at 307 (quoting **Penry I**, 492 U.S. at 319; emphasis added). "In order to present relevant evidence that one is less culpable for his crime,

11

the evidence must show (1) a 'uniquely severe permanent handicap[]' with which the defendant was burdened through no fault of his own', and (2) that the criminal act was attributable to this severe permanent condition." ***Davis v. Scott***, 51 F.3d 457, 460-61 (5th Cir.) (alteration in original; internal citations omitted; quoting ***Graham v. Collins***, 950 F.2d 1009, 1029 (5th Cir. 1992) (en banc), *aff'd on other grounds*, 506 U.S. 461 (1993)), *cert. denied*, 516 U.S. 992 (1995); *see also* ***Turner v. Johnson***, 106 F.3d 1178, 1189 (5th Cir. 1997) ("To qualify for the special exception to the scope of the special issues carved out by ***Penry*** [***I***], proffered evidence must demonstrate a 'uniquely severe permanent handicap ... with which the defendant was burdened through no fault of his own.'" (quoting ***Graham***, 950 F.2d at 1029)).

Obviously, in this light, the cited mitigating evidence of Dinkins' military service, good deeds, and good character is not ***Penry*** evidence. Accordingly, his ***Penry*** claim ends there. (Along this line, Dinkins' "claim fails for lack of nexus between the mitigating evidence and the criminal act". ***Harris v. Johnson***, 81 F.3d 535, 539 (5th Cir.), *cert. denied*, 517 U.S. 1227 (1996).)

2.

Even assuming, *arguendo*, Dinkins' evidence *is* such evidence, it was not placed beyond the effective reach of the jurors. It "could be considered by the jury to some extent under one of the special issues — particularly the [second] issue of 'future

12

dangerousness'". ***Madden***, 18 F.3d at 308 n.15.  Indeed, in ***Graham v. Collins***, 506 U.S. 461, 476 (1993), the Court stated it was "not convinced that ***Penry*** [***I***] could be extended to cover" mitigating evidence of "positive character traits" because such evidence is already given adequate consideration in the special issues:

> ***Jurek*** is reasonably read as holding that the circumstance of youth is given constitutionally adequate consideration in deciding the special issues.  We see no reason to regard the circumstances of Graham's family background and *positive character traits* in a different light.

***Id.*** at 476 (emphasis added).

The Supreme Court has similarly held that other types of mitigating evidence are given sufficient consideration by the special issues:

> The evidence of petitioner's youth ... falls outside ***Penry*** [***I's***] ambit.  Unlike Penry's mental retardation, which rendered him unable to learn from his mistakes, the ill effects of youth that a defendant may experience are subject to change and, as a result, are readily comprehended as a mitigating factor in consideration of the second special issue [future dangerousness].

***Johnson v. Texas***, 509 U.S. 350, 369 (1993).  *See also* ***Boyd v. Johnson***, 167 F.3d 907, 912 (5th Cir.) ("Evidence of good character tends to show that the crime was an aberration, which may support a negative answer to the special issue regarding the future dangerousness of the defendant."), *cert. denied*, 527 U.S. 1055 (1999); ***Barnard v. Collins***, 958 F.2d 634, 640 (1992) ("[E]vidence

13

of ... good character, including evidence of ... carpentry skills, work history, and familial responsibility and support[,] ... does not require a special instruction under *Penry* [*I*]".), *cert. denied*, 506 U.S. 1057 (1993). (Nor does such evidence present the "double-edged" potential of concern in *Penry I* and *II*.)

3.

Dinkins' claim fails for a third reason: it is *Teague*-barred. *See Teague v. Lane*, 489 U.S. 288 (1989). "As none of [Dinkins'] mitigating evidence was truly doubled-edged in a way that Penry's evidence was, and as [Dinkins'] evidence could be considered by the jury under the ... second special issue, the relief [Dinkins] seeks was not 'dictated' by precedent and thus constitutes a 'new rule' under *Teague*." *Madden*, 18 F.3d at 308 n.15.

III.

For the foregoing reasons, the denial of habeas relief is **AFFIRMED**. Dinkins' counsel is cautioned that repetition of the type of factual misstatements noted in this opinion may result in the imposition of sanctions.

*AFFIRMED*

14